## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK and INTELLIGENT BIO-SYSTEMS, INC., | ) ) ) ) | |
| Plaintiffs-Counterclaim Defendants, | ) ) | |
| and QIAGEN N.V., | ) ) | |
| Counterclaim Defendant, | ) | C.A. No. 12-376-GMS |
| v. | ) ) | |
| ILLUMINA, INC., | ) ) | |
| Defendant-Counterclaim Plaintiff. | ) ) | |
| and ILLUMINA CAMBRIDGE LTD., | ) ) | |
| Counterclaim Plaintiff. | ) | |

## QIAGEN N.V.'S BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS COUNTERCLAIMS FOR LACK OF PERSONAL
## JURISDICTION, FOR FAILURE TO STATE A CLAIM,
## AND FOR LACK OF SUBJECT MATTER JURISDICTION

OF COUNSEL:

Robert R. Baron, Jr.
Marc S. Segal
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500



Dated:  October 31, 2012

Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR LLP
919 North Market Street, 11th Floor
Wilmington, DE  19801
Tel:     (302) 252-4447
Fax:     (302) 355-0221
Email: moskowb@ballardspahr.com

*Attorneys for*
*Counterclaim Defendant*
*QIAGEN N.V.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................. ii

NATURE AND STAGE OF PROCEEDING ...........................................................................1

SUMMARY OF ARGUMENT ................................................................................................2

STATEMENT OF FACTS .......................................................................................................4

ARGUMENT ...........................................................................................................................6

I.      The court lacks personal jurisdiction OVER
        QIAGEN N.V. ...........................................................................................................6

        A.      QIAGEN N.V. Has Insufficient Contacts with Delaware
                to Subject It to the Personal Jurisdiction of this Court ........................6

        B.      QIAGEN N.V. Is Not Subject to Personal Jurisdiction
                Due to the Acts of Its Subsidiary IBS ....................................................11

        C.      A Finding of Personal Jurisdiction Over QIAGEN N.V.
                Would Offend Constitutional Notions of "Fair Play and
                Substantial Justice" ...............................................................................14

II.     Illumina's INFRINGEMENT Counterclaims Fail to State a Claim
        AGAINST QIAGEN N.V. ........................................................................................15

        A.      Illumina Has Not Pled Sufficient Facts to State an
                Infringement Claim Against QIAGEN N.V. ..........................................15

        B.      Illumina Should Be Denied Leave to Amend ........................................18

III.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
        ILLUMINA'S DECLARATORY JUDGMENT COUNTERCLAIMS
        AGAINST QIAGEN N.V. ........................................................................................18

IV.     CONCLUSION .........................................................................................................20

## Table of Authorities

**Page(s)**

### FEDERAL CASES

*Applied Biosystems, Inc. v. Cruachem, Ltd.*,
    772 F. Supp. 1458 (D. Del. 1991) ..................................................................9, 11

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987) .................................................................................7, 8, 14

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009) ...............................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................2, 15, 16

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..............................................................................................7

*C.R. Bard, Inc. v. Guidant Corp.*,
    997 F. Supp. 556 (D. Del. 1998) ....................................................................11, 13

*Compaq Computer Corp. v. Packard Bell Elec.*,
    948 F. Supp. 338 (D. Del. 1996) ..........................................................................7

*Congoleum Corp. v. DLW Aktiengesellschaft*,
    729 F.2d 1240 (9th Cir. 1984) .............................................................................10

*Davis v. PNGI Charles Town Gaming, LLC*,
    No. 07-2352, 2007 WL 4553695 (E.D. Pa. Dec. 26, 2007) ...................................10

*Driessen v. Sony Music Entertainment.*,
    No. 09-0140, 2012 WL 130412 (D. Utah Jan. 17, 2012) ......................................17

*E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*,
    197 F.R.D. 112 (D. Del. 2000) ..............................................................................6

*Epic Sys. Corp. v. Acacia Research Corp.*,
    No. 06-255, 2006 WL 3355185 (D. Del. Nov. 16, 2006) ..........................18, 19, 20

*Eurofins Pharma U.S. Holdings, Inc. v. Bioalliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010) ..............................................................................7, 9

*Eurofins Pharma U.S. Holdings, Inc. v. Bioalliance Pharma SA*,
    No. 08-613, 2009 WL 2992552 (D. Del. Sept. 18, 2009) ......................................9

*Feldman v. Bally's Park Place, Inc.*,
   No. 05-5345, 2006 WL 1582331 (E.D. Pa. June 5, 2006) ...................................................10

*Fina Research, S.A. v. Baroid Ltd.*,
   141 F.3d 1479 (Fed. Cir. 1998) ...........................................................................................19

*Foman v. Davis*,
   371 U.S. 178 (1962) ...........................................................................................................18

*GMP Techs., LLC v. Zicam, LLC*,
   No. 08-7077, 2009 WL 5064762 (N.D. Ill. Dec. 9, 2009) ...................................................19

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*,
   149 F.3d 1382 (Fed. Cir. 1998) .............................................................................................7

*Green v. Chicago, Burlington, & Quincy Ry. Co.*,
   205 U.S. 530 (1907) ...........................................................................................................10

*Grober v. Mako*,
   Nos. 2010-1519 & 2010-1527, 2012 WL 3065278 (Fed. Cir. July 30, 2012) .........................6

*Harlow v. Children's Hosp.*,
   432 F.3d 50 (1st Cir. 2005) .................................................................................................10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) .............................................................................................................8

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ..............................................................................................18

*Intel Corp. v. Silicon Storage Tech., Inc.*,
   20 F. Supp. 2d 690 (D. Del. 1998) ...................................................................................8, 10

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .............................................................................................................7

*MedImmune, Inc. v. Genentech Inc.*,
   549 U.S. 118 (2007) ...........................................................................................................19

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   443 F. Supp. 2d 636 (D. Del. 2006) .....................................................................................12

*Morrow v. Microsoft Corp.*,
   499 F.3d 1332 (Fed. Cir. 2007) ...........................................................................................19

*Mylan Pharm. v. Kremers Urban Dev. Co.*,
   No. 02-1628, 2003 WL 1843858 (D. Del. Apr. 7, 2003) ....................................................7, 8

*Papasan v. Allain*,
    478 U.S. 265 (1986) .................................................................................................16

*Sears, Roebuck, & Co. v. Sears PLC*,
    744 F. Supp. 1297 (D. Del. 1990) .............................................................................8

*Shipley v. Orndoff*,
    491 F. Supp. 2d 498 (D. Del. 2007) .........................................................................18

*Telcordia Techs., Inc. v. Alcatel S.A.*,
    No. 04-874, 2005 WL 1268061 (D. Del. May 27, 2005) ..................................6, 12

*Top Victory Elec. v. Hitachi Ltd*,
    No. 10-01579, 2009 WL 4722482 (N.D. Cal. Nov. 15, 2010).................................19

*Transportes Aeros de Angola v. Ronair, Inc.*,
    544 F. Supp. 858 (D. Del. 1982) ...............................................................................7

*Troll Busters, LLC v. Roche Diagnostics GMBH*,
    2011 WL 3859721 (S.D. Cal. Aug. 31, 2011).........................................................13

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ...................................................................................................12

*Via Vadis, LLC v. Skype, Inc.*,
    No. 11-507, 2012 WL 2789733 (D. Del. July 6, 2012)....................................16, 17

*Wells v. Edison Int'l, Inc.*,
    No. 09-1728, 2009 WL 1891801 (N.D. Ill. July 1, 2009) .......................................14

### STATE CASES

*Gerber v. Young*,
    1987 WL 9670 (Del. Super. Ct. 1987) ....................................................................10

### STATUTES

Del. Code Ann. Title 10, § 3104(c) ...............................................................................7

### RULES

Fed. R. Civ. P. 8(a) (2) .................................................................................................15

Fed. R. Civ. P. 12(b)(1) ...............................................................................................18

Fed. R. Civ. P. 12(b)(2) .................................................................................................6

Fed. R. Civ. P. 12(b)(6) ............................................................................................3, 15

Fed. R. Civ. P. 15(a) ................................................................................................................ 18

## NATURE AND STAGE OF PROCEEDING

On April 11, 2012, The Trustees of Columbia University In the City of New York ("Columbia") and Intelligent Bio-Systems, Inc. ("IBS") filed their amended complaint bringing this patent infringement suit against Illumina, Inc., for infringement of five patents owned by Columbia and exclusively licensed to IBS (the "Columbia Patents-In-Suit").[1]  After requesting an extension of time, Illumina, Inc. answered plaintiffs' amended complaint on June 4, 2012.  The counterclaims contained in Illumina Inc.'s Answer sought only declaratory judgment as to non-infringement and invalidity of the Columbia Patents-In-Suit.

Later in June 2012, QIAGEN N.V. announced that a subsidiary of one of its subsidiaries had purchased IBS.  On July 20, 2012, Illumina, Inc. and related company Illumina Cambridge Ltd. (collectively "Illumina") filed a motion for leave to amend its Answer to add counterclaims against both IBS and new party QIAGEN N.V., alleging IBS's products infringed certain Illumina patents (the "Illumina Patents-In-Suit").[2]  The Columbia Patents-In-Suit, the Illumina Patents-In-Suit, and each party's accused products relate to next-generation rapid DNA sequencing by a method known generally as "sequencing by synthesis."

IBS and QIAGEN N.V. agreed to Illumina's request to amend with the understanding that they reserved their rights to challenge Illumina's counterclaims, including on the ground of lack of personal jurisdiction.  Accordingly, on August 30, 2012, by

---

[1]     Specifically, the Columbia Patents-In-Suit comprise 0 ("the '578 Patent), 7,713,698 ("the '698 Patent), 7,790,869 ("the '0869 Patent"), 7,883,869 ("the '3869 Patent"), and 8,088,575 ("the '575 Patent).

[2]     Specifically, the Illumina Patents-In-Suit comprise U.S. Patent Nos. 7,057,026 ("the '026 Patent"); 7,785,796 ("the '796 Patent"); and 8,158,346 ("the '346 Patent).

Stipulated Order, Illumina filed its Amended Answer and Counterclaims against IBS and

QIAGEN N.V., (1) requesting declaratory judgment of invalidity of the Columbia Patents-In-

Suit; (2) requesting declaratory judgment of non-infringement of the Columbia Patents-in-

Suit; and (3) asserting infringement of the Illumina Patents-in-Suit.  (D.I. 24, Counterclaims,

Counts I-V).

### SUMMARY OF ARGUMENT

1.      QIAGEN N.V. should be dismissed from this action because it is not

subject to the personal jurisdiction of this Court.  In April 2012, after this suit was filed,

QIAGEN N.V. became the ultimate parent company of IBS when the subsidiary of one of

QIAGEN N.V.'s subsidiaries purchased IBS.  But that cannot justify QIAGEN N.V.'s

inclusion in this case or this forum.  QIAGEN N.V. is a Dutch company that does not

develop, manufacture, distribute, package or sell any product in Delaware, much less those

accused in this suit.  QIAGEN N.V. does not have any offices or employees in Delaware, and

does not own real estate in Delaware.  Accordingly, the Court cannot exercise personal

jurisdiction over QIAGEN N.V.

While IBS is a Delaware corporation, QIAGEN N.V.'s recent acquisition of

IBS through subsidiaries does not subject it to the jurisdiction of this Court.  QIAGEN N.V.

and IBS are separate and distinct legal entities; they observe the required corporate

formalities; they have separate boards of directors; and they maintain separate financial

records and distinct bank accounts.  More importantly, QIAGEN N.V. does not control IBS's

day-to-day operations.

2.      Illumina's infringement counterclaims also fail to state a claim against

QIAGEN N.V.  Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), to survive a

motion to dismiss under Rule 12(b)(6), the claims must allege sufficient underlying facts that support a claim that is "plausible."  Here, Illumina merely adds "and Qiagen" to its claims against IBS, and does not allege or explain QIAGEN N.V.'s specific basis for liability (particularly given that QIAGEN N.V. does not in fact make or sell the products at issue). Should the Court dismiss Illumina's counterclaims against QIAGEN N.V. on this ground, Illumina should be denied leave to amend its counterclaims because such an amendment would be futile.  As a Dutch parent company, QIAGEN N.V. does not manufacture or sell the products at issue and thus cannot be liable for direct or contributory infringement.  Regarding inducement and contributory infringement, because QIAGEN N.V. does not instruct anyone as to how to use the accused products, Illumina cannot plead that QIAGEN N.V. knowingly induced the infringing acts of customers with a specific intent to cause infringement.

       3.  QIAGEN N.V. is not a proper party to Illumina's declaratory judgment counterclaims.  QIAGEN N.V. is not the patentee, an assignee, or the exclusive licensee of the Columbia Patents-in-Suit.  Columbia owns the Columbia Patents-In-Suit, and IBS remains the exclusive licensee.  Thus, QIAGEN N.V. would lack standing to assert an infringement claim under the Columbia Patents-in-Suit.  Because a declaratory judgment claim is merely a mirror action of an infringement claim, Illumina lacks standing to bring a declaratory judgment against QIAGEN N.V.

       Accordingly, Illumina's counterclaims against QIAGEN N.V. should be dismissed for lack of personal jurisdiction, for failing to state a claim upon which relief may be granted, and for a lack of subject matter jurisdiction.

**STATEMENT OF FACTS**

Pursuant to the Court's Scheduling Order, on October 12, 2012, Illumina identified certain "IBS/Qiagen products" (the "IBS Accused Products") as allegedly infringing one or more of the Illumina Patents-In-Suit.  (*See* Illumina, Inc. and Illumina Cambridge Ltd.'s Identification of Asserted Patents, Accused Products, and File Histories, a copy of which is attached at Ex. A, at page 2.)   Similarly, in Counts III-IV of its counterclaims, Illumina simply adds "and Qiagen [N.V.]" after each allegation regarding IBS and its manufacture, sale and interaction with customers regarding the IBS Accused Products without alleging QIAGEN N.V.'s specific involvement, and notwithstanding that QIAGEN N.V. had only recently purchased IBS.  (*See* D.I. 24, Counterclaims, at ¶¶ 45-48, 52-56, 60-64.)  QIAGEN N.V. is a Dutch parent company that does not make, develop, sell, provide instructions for use, or otherwise have anything to do with the products so identified by Illumina.   (*See* Declaration of Axel Backheuer ("Backheuer Decl."), attached hereto at Ex. B, at ¶¶ 2, 7.)

In fact, QIAGEN N.V. does not manufacture, distribute, package, ship, or sell any products.  (*Id.* at ¶ 2.)  QIAGEN N.V. does not have any offices in Delaware.  (*Id.*)  QIAGEN N.V. does not have any employees in Delaware and it does not own or lease real estate in Delaware.  (*Id.*)  It does not pay taxes in Delaware.  (*Id.* at 3.)  It does not receive income directly from the sale of the IBS Accused Products.  (*Id.* at ¶ 5.)  QIAGEN N.V. is merely the ultimate foreign parent corporation of IBS, holding various subsidiaries that operate throughout the world.  (*Id.* at ¶ 4.)

QIAGEN N.V. does not even directly own IBS.  IBS is a wholly-owned subsidiary of QIAGEN North American Holdings Inc., a company incorporated in California,

which in turn is a wholly-owned subsidiary of QIAGEN US Financial Holding (Luxembourg) S.a.r.l., a company incorporated in Luxembourg, which in turn is a wholly-owned subsidiary of QIAGEN N.V.  (*Id.*)  Thus, IBS is QIAGEN N.V.'s sub-sub-subsidiary.

IBS -- not QIAGEN N.V. -- is the operating entity that developed, made and sold the IBS Accused Products.  (*See* Declaration of Jerzy Olejnik ("Olejnik Decl."), attached hereto at Ex. C, at ¶ 2.)  IBS -- not QIAGEN N.V. -- is the exclusive licensee of the Columbia Patents-in-Suit.  (*Id.* at ¶ 3.)

QIAGEN N.V. was not involved in the development of IBS's sequencing technology, and does not make, offer to sell, or sell the accused DNA sequencers.  (*Id.* at ¶ 4.) To date, IBS has sold two of the accused instruments—one MAX-Seq, and one MINI-20, with some accompanying flow cells for the MINI-20s.  (*Id.* at ¶¶ 5-7.)  The MAX-Seq identified by Illumina as infringing the Illumina Patents-In-Suit has been discontinued.  (Id. at ¶ 6.)  IBS sold one now-discontinued MAX-Seq, and did so <u>before QIAGEN North American Holdings, Inc. purchased IBS.</u>  (*Id.*)  IBS received its purchase order for its other sale to date, of the MINI-20 and a corresponding flow cell, in January 2012, <u>before IBS was purchased by QIAGEN North American Holdings, Inc.</u>, but the products were not delivered and paid for until June 2012, after IBS was purchased.  (*Id.* at ¶ 7.)  In addition, IBS received a purchase order and down payment for a second MINI-20 and a corresponding flow cell <u>in April 2012 before IBS was purchased by QIAGEN North American Holdings, Inc.</u>, but this MINI-20 and flow cell have not been delivered.  (*Id.* at ¶ 8.)

QIAGEN N.V. and IBS are separate and distinct legal entities.  (Backheuer Decl. Ex. B, at ¶ 5.)  While there is an overlap of two officers and one director, the companies

have separate CEOs and boards of directors;[3] they maintain separate financial records and

distinct bank accounts; and QIAGEN N.V. does not control IBS's day-to-day operations or its

management.  (*Id.*)

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER QIAGEN N.V.

Illumina bears the burden of alleging facts sufficient to make a *prima facie*

showing of personal jurisdiction over QIAGEN N.V.  *See Telcordia Techs., Inc. v. Alcatel*

*S.A.*, No. 04-874, 2005 WL 1268061, at *2 (D. Del. May 27, 2005) (Sleet, J.).  To meet its

burden, Illumina must present facts that "establish with reasonable particularity" that

jurisdiction over QIAGEN N.V. exists.  *Id.*  This, Illumina has not done.

### A.    QIAGEN N.V. Has Insufficient Contacts with Delaware
### to Subject It to the Personal Jurisdiction of this Court

"Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to

dismiss a case when the court lacks personal jurisdiction over the defendant[]."  *E.I. DuPont*

*de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D. Del.

2000).  In determining whether personal jurisdiction exists, courts engage in a two-step

analysis.  *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir.

2009).[4]  First, the Court must decide whether jurisdiction is authorized by the long-arm statute

---

[3]     QIAGEN N.V.'s CEO is Peer Schatz.  (Backheuer Decl., Ex. B, at ¶ 6.)  IBS's CEO is
Steven Gordon, who holds no position at QIAGEN N.V.  (*Id.*)  Mr. Schatz is the sole
director and an officer for many of QIAGEN N.V.'s various subsidiaries, including
IBS.  (*Id.*)  Similarly, Roland Sackers, QIAGEN N.V.'s CFO, has been appointed an
officer for many of QIAGEN N.V.'s various subsidiaries, including IBS.  (*Id.*)
Neither Schatz nor Sackers, however, has any responsibilities relating to IBS's day-to-
day operations.  (*Id.*)

[4]     In patent infringement cases, Federal Circuit law controls when deciding jurisdictional
issues.  *See Grober v. Mako*, Nos. 2010-1519 & 2010-1527, 2012 WL 3065278, at *7

of the state in which the court sits.  *Mylan Pharm. v. Kremers Urban Dev. Co.*, No. 02-1628, 2003 WL 1843858, at *2 (D. Del. Apr. 7, 2003) (Sleet, J.); *Transportes Aeros de Angola v. Ronair, Inc.*, 544 F. Supp. 858,  864–65 (D. Del. 1982).  "In pertinent part, the Delaware long-arm statute provides a statutory basis for the exercise of personal jurisdiction over any nonresident who transacts business or performs work in Delaware, contracts to supply services or things in Delaware, or causes tortious injury in Delaware by an act or omission in Delaware."  *Eurofins Pharma U.S. Holdings, Inc. v. Bioalliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010) (citing Del. Code Ann. tit. 10, § 3104(c)) (affirming this Court's dismissal of a foreign parent for lack of personal jurisdiction).

If jurisdiction is proper under the long-arm statute, the court then must determine whether exercising personal jurisdiction comports with the requirements of Constitutional Due Process.  *Compaq Computer Corp. v. Packard Bell Elec.*, 948 F. Supp. 338, 342 (D. Del. 1996).   To satisfy due process, the court must find the existence of "minimum contacts" – contacts between the defendant and the forum state that both relate to the cause of action at issue and are sufficient enough in nature and amount "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Specifically, the plaintiff must show that the out-of-state defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State[.]"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also Asahi Metal Indus. Co. v. Superior Court*, 480

---

(Fed. Cir. July 30, 2012).  The Federal Circuit, however, defers to decisions of the relevant state and federal courts in interpreting the meaning of state long-arm statutes. *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998).

U.S. 102, 108–09 (1987). Unless the contacts are "continuous and systematic" (known as "general jurisdiction"), the contacts must be related to the present cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984); *Mylan Pharm.*, 2003 WL 1843858, at *2. Cases finding general jurisdiction based on continuous and systematic contacts are "extremely rare". *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 699 (D. Del. 1998) (citing *Sears, Roebuck, & Co. v. Sears PLC*, 744 F. Supp. 1297, 1304 (D. Del. 1990)).

Given its constitutional dimension, this second prong of personal jurisdiction analysis can be dispositive. *See, e.g., Mylan*, 2003 WL 1843858 at *2 (finding that because the exercise of personal jurisdiction over a defendant would offend the Due Process Clause, the court need not definitively decide the appropriateness of personal jurisdiction under the long-arm statute). In addition, in cases involving foreign parties such as QIAGEN N.V., the United States Supreme Court has stated that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co.*, 480 U.S. at 115.

Here, Illumina has made no averment of fact supporting a determination of personal jurisdiction over QIAGEN N.V. Nor can there be. QIAGEN N.V. does not manufacture, distribute, package, sell, or ship the IBS Accused Products in Delaware or anywhere else. (Backheuer Decl., Ex. B, at ¶¶ 2, 7.) QIAGEN N.V. does not have any offices or employees in Delaware, and it does not own or lease real estate in Delaware. (*Id.* at ¶ 2.) It does not receive income directly from the sale of the IBS Accused Products. (*Id.* at ¶ 5.) QIAGEN N.V. does not pay taxes in Delaware. (*Id.* at ¶ 3.) Accordingly, QIAGEN N.V. should not be subject to personal jurisdiction in Delaware. *See, e.g., Mylan*, 2003 WL

1843858, at *3-*4 (finding that requiring a foreign company with no substantial contacts with Delaware to defend itself in Delaware would not be "fair and just.").

Nor can the fact that QIAGEN N.V. is now the ultimate parent company of IBS be sufficient to confer personal jurisdiction.  The law is clear that being the foreign parent of a Delaware subsidiary is insufficient to confer personal jurisdiction over a nonresident defendant under the Delaware long-arm statute.  *Eurofins Pharma U.S. Holdings*, 623 F.3d at 156 (citing and affirming-in-relevant part *Eurofins Pharma U.S. Holdings, Inc. v. Bioalliance Pharma SA*, No. 08-613, 2009 WL 2992552, at *4 (D. Del. Sept. 18, 2009) (Sleet, J.)); *see also Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1470-71 (D. Del. 1991) (ruling that ownership of a Delaware subsidiary does not qualify as "a continuous and systematic contact with Delaware under a general jurisdiction theory").

Finally, while QIAGEN N.V. does not develop, manufacture, distribute, package or sell *any* products, much less those accused in this suit, its employees have occasionally called existing or potential customers in the U.S. regarding products not involved in this case.  *See* Declaration of Ina Scheuerpflug ("Scheuerpflug Decl."), attached hereto at Ex. D, at ¶ 3.)  None of these calls related to any of the IBS Accused Products.  (*Id.*)  There were such unrelated calls to only one Delaware organization on one day in July 2011.  (*Id.*)  QIAGEN N.V. also sends emails to its subsidiaries' customers and potential customers around the world, including to people at approximately 25 Delaware organizations.  (*Id. at* ¶ 6.)  None of these emails relate to any of the IBS Accused Products.[5]  (*Id.*)  Such phone call

---

[5] QIAGEN N.V. also occasionally sends emails to email addresses from lists purchased from outside organizations.  (Scheuerpflug Decl., Ex. D, at ¶ 6.)  The location of the people receiving these emails are unknown to QIAGEN N.V.  (*Id.*)  None of these emails relate to IBS products.  (*Id.*)

and email solicitations regarding unrelated products are not the kind of contacts that meet the high threshold required to confer "general" personal jurisdiction over QIAGEN N.V. *See, e.g., Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 699 (D. Del. 1998) (stating that cases finding general jurisdiction are "extremely rare"); *Gerber v. Young*, 1987 WL 9670, at *2-*3 (Del. Super. Ct. 1987) (holding that no general personal jurisdiction existed over foreign corporation that had engaged in a two year "pattern of regular solicitation" because finding jurisdiction on such solicitations "would offend the traditional notion of fair play and substantial justice"); *Harlow v. Children's Hosp.*, 432 F.3d 50, 65-66 (1st Cir. 2005) (holding that, among other contacts, mailings to 82 physicians in the forum was insufficient to support general jurisdiction); *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242-43 (9th Cir. 1984) (holding that "it would not comport with fair play and substantial justice to assert jurisdiction over a West German corporation" for soliciting orders in forum); *Davis v. PNGI Charles Town Gaming, LLC*, No. 07-2352, 2007 WL 4553695, at *3-*5 (E.D. Pa. Dec. 26, 2007) (finding that tens of thousands of direct mail and telephone calls into forum were not sufficient to confer general jurisdiction); *Feldman v. Bally's Park Place, Inc.*, No. 05-5345, 2006 WL 1582331 at *3 (E.D. Pa. June 5, 2006) (finding defendant's advertisements and solicitations in forum state "on a continuous basis during the four years preceding the filing of [the] action" still were not the kind of contacts required to "meet the high standard for the exercise of general personal jurisdiction"); *see also Green v. Chicago, Burlington, & Quincy Ry. Co.*, 205 U.S. 530, 533-34 (1907) (holding agent's extensive, but unrelated, contacts in forum were insufficient for jurisdiction because agent's actions were "nothing more than that of solicitation").

**B.      QIAGEN N.V. Is Not Subject to Personal Jurisdiction
Due to the Acts of Its Subsidiary IBS**

Under Delaware law, there are only two theories that permit a court to

establish jurisdiction over a parent corporation based upon its jurisdiction over the subsidiary:

the "alter ego theory" and the "agency theory." *C.R. Bard, Inc. v. Guidant Corp.*, 997 F.

Supp. 556, 559 (D. Del. 1998). In Delaware, a party asserting jurisdiction under the alter ego

theory "must establish some fraud, injustice, or inequity in the use of the corporate form." *Id.*

(citing *Applied Biosystems*, 772 F. Supp. at 1463 (explaining that Delaware courts will ignore

corporate boundaries where "fraud or inequity is shown")). Illumina has not, and cannot,

plead any facts to suggest that QIAGEN N.V. is the alter ego of IBS.

Under the agency theory, a court "will attribute the actions of a subsidiary

company to its parent where the subsidiary acts on the parent's behalf or at the parent's

direction." *C.R. Bard*, 997 F. Supp. at 560 (citation omitted). The factors relevant to such a

determination include: "the extent of overlap of officers and directors, methods of financing,

the division of responsibility for day-to-day management, and the process by which each

corporation obtains its business." *Applied Biosystems*, 772 F. Supp. at 1463.

Here, Illumina's allegations are insufficient to establish that IBS is acting as an

agent of QIAGEN N.V. Indeed, Illumina's counterclaims do not address any of the above-

mentioned agency factors. As set forth in the Backheuer Declaration, QIAGEN N.V. and IBS

are separate and distinct legal entities. (Backheuer Dec., Ex. B, at ¶ 5.) Moreover, there is

only a limited overlap of two officers and one director. (*Id.*) The companies have separate

CEOs and boards of directors; they maintain separate financial records and distinct bank

accounts; and QIAGEN N.V. does not control IBS's day-to-day operations or its

management. (*Id.*)

Based on similar facts, this Court refused to exercise jurisdiction over a foreign parent company. *See Telcordia Techs., Inc. v. Alcatel S.A.*, No. 04-874, 2005 WL 1268061, at *4 (D. Del. May 27, 2005). The foreign parent in *Telcordia* was merely a parent company that did not "manufacture, sell, advertise, offer to sell, trade[,] or import any goods or services in the United States[.]" *Id.* at *1. Similarly, the parent did not maintain any offices or other facilities in Delaware, nor did it own or lease any real property in Delaware. *Id.* Notably, the court concluded that an overlap of officers and directors between the parent and the subsidiary was insufficient to support the theory that the subsidiary was acting as the parent's agent.[6] On that point, the Court explained, "it is entirely appropriate for directors of a parent corporation to serve as directors of a subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *Id.* (quoting *United States v. Bestfoods*, 524 U.S. 51, 69, (1998) (noting that it is a "well established principle . . . that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership")); *see also Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 644-45 (D. Del. 2006) (dismissing foreign parent holding company despite an overlap of some officers and directors with its U.S. operating subsidiaries).

Nor is there a basis for personal jurisdiction because QIAGEN N.V. has said in press releases that "it plans to improve IBS's existing sequencing platform." (D.I. 24, Counterclaims, at ¶ 5.) Specifically, in recognition that it is common business practice for

---

[6]     In *Telcordia*, the Senior Executive Vice President of the foreign parent served as the CEO of the subsidiary, and the President and COO of the parent, served on the Board of Directors of the subsidiary. *Telcordia Techs., Inc. v. Alcatel S.A.*, No. 04-874, 2005 WL 1268061, at *3 (D. Del. May 27, 2005).

parent companies to speak on behalf of its subsidiaries, courts have consistently rejected any attempt to confer jurisdiction over parent holding companies based on statements about their involvement with their subsidiaries.

Notably, one federal court already found it had no personal jurisdiction over QIAGEN N.V., despite QIAGEN N.V.'s statements regarding its subsidiaries. *See Troll Busters LLC v. Roche Diagnostics GMBH*, No. 11CV56, 2011 WL 3859721, at *10-*12 (S.D. Cal. Aug 31, 2011). In *Troll Busters*, plaintiff tried to use statements made by QIAGEN N.V. in a SEC filing regarding its subsidiaries to confer jurisdiction. *Id.* at *11. The court rejected that argument holding that "[p]laintiff has not demonstrated the contacts of Qiagen NV's U.S. sub-subsidiary companies with the state can be attributed to Qiagen NV under the 'agency' test." *Id.* at *12. The court explained that the "annual business reports of a foreign parent company often recite facts regarding the operation of its subsidiaries." *Id.*

Similarly, in *C.R. Bard*, the patentee sued both an operating subsidiary and its out-of-state parent holding company for patent infringement. *C.R. Bard*, 997 F. Supp. at 557. The court declined to exercise jurisdiction over the parent company despite plaintiff's allegations in that case (which Illumina has not alleged here) that the parent company had "close business ties" with its subsidiary, and that it took "deliberate steps to blur any purported distinction" between the two. *Id.* at 560. In particular, plaintiff relied on, among other things, a press release by the parent that stated *it* [the foreign parent] had obtained FDA approval of the accused product – even though it was the subsidiary that obtained the approval – and that the accused product "was an addition to [the parent's] 'successful  [ ] family of products.'" *Id.* at 558. Despite these statements, the court held that plaintiff failed to produce sufficient evidence that the subsidiary was acting as the parent's agent. *Id.* at 561; *see also*

13

*Wells v. Edison Int'l, Inc.*, No. 09-1728, 2009 WL 1891801, at *5 (N.D. Ill. July 1, 2009) (holding that statements by parent regarding activities of subsidiary in parent's annual report and on the parent's website are insufficient to pierce corporate veil to confer jurisdiction over parent).  Similarly, here, any statements regarding QIAGEN N.V. "moving into the next-generation sequencing market" and that it plans "to improve IBS's existing sequencing platform" are insufficient to establish an agency relationship, and thus confer no jurisdiction over QIAGEN N.V.

### C.   A Finding of Personal Jurisdiction Over QIAGEN N.V. Would Offend Constitutional Notions of "Fair Play and Substantial Justice"

The exercise of personal jurisdiction over QIAGEN N.V. also would offend well-settled constitutional notions of "fair play and substantial justice."  *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-16 (1987) (explaining a court cannot exercise personal jurisdiction over a defendant under circumstances that would offend "traditional notions of fair play and substantial justice" and holding the exercise of personal jurisdiction over the foreign defendant would be unreasonable and unfair given the severe burden on the defendant and the slight interests of the plaintiff and the forum State).  In making such a determination, the Court should consider (1) the burden on QIAGEN N.V., (2) Delaware's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the states involved in furthering fundamental substantive social policies.  *See id.* at *113 (providing factors for analyzing reasonableness of exercising jurisdiction).

To subject QIAGEN N.V. to jurisdiction in this Court would impose a significant burden on it. Furthermore, Illumina's counterclaims do not involve Delaware law, but federal patent law claims owned by a U.K. company (Illumina Cambridge Ltd. is the named owner of the Illumina Patents-In-Suit). Illumina does not need QIAGEN N.V. in the current action, because it has IBS, a Delaware corporation with admitted Delaware contacts, remaining in this action as the counterclaim defendant.

* * *

Based on these facts, the Court should dismiss QIAGEN N.V. for lack of personal jurisdiction.

## II. ILLUMINA'S INFRINGEMENT COUNTERCLAIMS FAIL TO STATE A CLAIM AGAINST QIAGEN N.V.

### A. Illumina Has Not Pled Sufficient Facts to State an Infringement Claim Against QIAGEN N.V.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint based on the failure to state a claim upon which relief may be granted. To state such a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations and citations omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, when accepted as true, "state a claim to relief that

15

is plausible on its face." *Id*. at 570.   Mere conclusions couched as factual allegations are not sufficient to state a cause of action.   *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Here, Illumina has not pled sufficient facts to state a plausible claim of infringement against QIAGEN N.V.   Illumina has failed to allege any specific actions undertaken by QIAGEN N.V. that would meet the elements of a direct or indirect infringement claim.   (D.I. 24, Counterclaims at ¶ 5.)   Rather, Illumina simply groups together its infringement allegations against QIAGEN N.V. with its allegations against IBS.   For example, Illumina alleges that "IBS and Qiagen have infringed, are infringing and/or will infringe, literally or by equivalence, one or more claims of the [Illumina Patents-in-Suit] by making, using offering to sell, or selling their Max-Seq and Mini-20 DNA Sequencers."   (D.I. 24, Counterclaims, at ¶¶ 44, 52, 60.)   Similarly, with respect to indirect infringement, Illumina simply alleges that "IBS and Qiagen have actively induced" and that "IBS and Qiagen have contributed to" the infringement of the Illumina Patents-in-Suit.   (*Id*. ¶¶ 46-47, 54-55, 62-63.) (Of course, as shown *supra* in Section I of the Argument regarding the absence of personal jurisdiction, QIAGEN N.V. is not making, using, selling, or talking to customers about the IBS Infringing Products.)

A recent case in this district is instructive.   In *Via Vadis, LLC v. Skype, Inc.*, No. 11-507, 2012 WL 2789733 (D. Del. July 6, 2012), the Court granted Microsoft's motion to dismiss because the only specific allegations regarding Microsoft was that Microsoft acquired Skype and that Skype was consolidated into Microsoft's operations.   *Id.* at *1.   Other than that, like in this case, plaintiff merely grouped Microsoft and the other defendants (including Skype) together and asserted the same allegations of infringement against them all (including for actions that took place before Microsoft purchased Skype).   *Id.*   Since the

plaintiffs improperly grouped the allegations of infringement against all the defendants, the Court found that there was "ambiguity in the complaint about Microsoft's responsibility" and, thus, held that the allegations were insufficient to state a claim against Microsoft.  *Id.*

Similarly, in *Driessen v. Sony Music Entertainment.*, No. 09-0140, 2012 WL 130412 (D. Utah Jan. 17, 2012), the Court dismissed plaintiffs' infringement claims, finding that "[p]laintiffs have failed to allege which [d]efendant took which action, under each element of each claim."  *Id.* at *1.  To the extent that plaintiffs were alleging that certain defendants should be liable for the actions of other defendants, the court found that "[p]laintiffs have also failed to articulate those facts which may establish the required agency relationship under a direct infringement, vicarious liability theory."  *Id.*

Here, Illumina fails to plead sufficient facts to state a plausible claim of patent infringement against QIAGEN N.V.  Like in *Via Vadis*, plaintiff implausibly groups QIAGEN N.V. with IBS to assert infringement, including for products made and for alleged acts that occurred before QIAGEN North American Holdings, Inc. purchased IBS.  As in *Driessen*, Illumina has failed to allege which counterclaim defendant – IBS or QIAGEN N.V. – "took which action, under each element of each claim."  *Driessen*, 2012 WL 130412 at *1.  Moreover, Illumina's conclusory allegations about QIAGEN N.V. making, using, selling, and communicating with customers regarding the IBS Accused Products are simply not correct, as set forth *supra* in Section I of the Argument regarding personal jurisdiction.  Because Illumina's counterclaims fail to allege sufficient facts to support the elements of an infringement claim against QIAGEN N.V., Illumina's claims against QIAGEN N.V. should be dismissed for failing to state a claim.

**B.      Illumina Should Be Denied Leave to Amend**

Although, pursuant to Fed. R. Civ. P. 15(a), leave to amend is typically to be freely given when justice so requires, leave may be denied where the amendment would be futile. *Shipley v. Orndoff*, 491 F. Supp. 2d 498, 509 (D. Del. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  An amendment is futile when the complaint, as amended, does not state a claim upon which relief can be granted.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434-35 (3d Cir. 1997).  Any amendment by Illumina to assert an infringement claim against QIAGEN N.V. would be futile, because QIAGEN N.V. does not make or sell the IBS Accused Products, or components thereof, and does not sell to or instruct any customers on how to use the accused products.  (Backheuer Decl., Ex. B, at ¶ 7.)  Thus, Illumina cannot state a claim of inducement because QIAGEN N.V. has not engaged in any of the requisite elements of these claims.

* * *

Accordingly, Illumina's infringement counterclaims against QIAGEN N.V. should be dismissed for failing to state a claim upon which relief may be granted, and Illumina should be denied the right to amend its counterclaims to assert infringement claims against QIAGEN N.V.

**III.      THE COURT LACKS SUBJECT MATTER JURISDICTION OVER ILLUMINA'S DECLARATORY JUDGMENT COUNTERCLAIMS AGAINST QIAGEN N.V.**

"Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction over the subject matter [of the complaint], or if the plaintiff lacks standing to bring his claims."  *Epic Sys. Corp. v. Acacia Research Corp.*, No. 06-255, 2006 WL 3355185, at *2 (D. Del. Nov. 16, 2006).  The proper test for subject matter

jurisdiction in a declaratory relief action is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between [the] parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech Inc.*, 549 U.S. 118, 126 (2007) (citation omitted).  To satisfy this requirement, the parties must have "adverse legal interests." *Id*.  "Declaratory noninfringement actions are mirror images of infringement suits, and so a party that lacks standing to bring an infringement suit is not the proper defendant to a declaratory noninfringement action." *GMP Techs., LLC v. Zicam, LLC*, No. 08-7077, 2009 WL 5064762, at *2 (N.D. Ill. Dec. 9, 2009) (citing *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998); *see also Top Victory Elec. v. Hitachi Ltd*, No. 10-01579, 2009 WL 4722482, at *2 (N.D. Cal. Nov. 15, 2010); *Epic Sys. Corp.*, 2006 WL 3355185, at *4.  Only a patentee, an assignee, or an exclusive licensee has standing to bring a suit.  *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007).

       As alleged in the amended complaint, Columbia University is the assignee and IBS is the exclusive licensee of the Columbia Patents-In-Suit.  (D.I. 5, ¶ 14; *see also* Olejnik Decl., Ex. C, at ¶ 3.)  In April 2012, QIAGEN North American Holdings, Inc. acquired IBS, with QIAGEN N.V. being the ultimate parent company.  (Backheuer Decl., Ex. B, at ¶ 4.)  As such, even with rights as an affiliate of IBS, because QIAGEN N.V. is itself not the owner or exclusive licensee of the Columbia Patents-In-Suit, it would not have standing to sue by itself for patent infringement of the Columbia Patents-in-Suit.  Accordingly, QIAGEN N.V. is not a proper party to a declaratory judgment action.  *See, e.g., GMP Techs., LLC,* 2009 WL 5064762, at *2 (dismissing declaratory judgment claims brought against parent company of the patentee); *Top Victory Elec.*, 2009 WL 4722482, at *3 (dismissing declaratory judgment

claims brought against parent company of assignee); *Epic Sys. Corp.*, 2006 WL 3355185, at

*4 (same).  Accordingly, Illumina's declaratory judgment counterclaims against QIAGEN

N.V. should be dismissed because Illumina lacks standing to assert such claims against

QIAGEN N.V.

## **CONCLUSION**

For the foregoing reasons, QIAGEN N.V. respectfully requests that the Court grant its

motion to dismiss Illumina's counterclaims against QIAGEN N.V. for lack of personal

jurisdiction, for failing to state a claim upon which relief may be granted, and for lack of

subject-matter jurisdiction.


Dated: October 31, 2012                                   BALLARD SPAHR LLP


                                                          /s/ Beth Moskow-Schnoll
                                                          Beth Moskow-Schnoll (I.D. #2900)
                                                          919 N. Market Street, 11th Floor
                                                          Wilmington, DE 19801-3034
                                                          (302) 252-4465
                                                          moskowb@ballardspahr.com

                                                          *Attorneys for*
                                                          *Counterclaim Defendant*
                                                          *QIAGEN N.V.*

OF COUNSEL:

Robert R. Baron, Jr.
Marc S. Segal
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500